**In the Interest of T.B. and R.B., Respondent.**

**Juvenile Officer, Gary WAINT, Respondent,**

v.

**M.B. (Natural Mother), Appellant.**

Nos. WD 53380, WD 53390.

Missouri Court of Appeals, Western District.

Dec. 9, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 1998.

Application for Transfer Denied March 24, 1998.

Robert W. Wheeler, Wheeler and Wheeler, Keytesville, for appellant.

Diana Painter, Moberly, for respondent.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

M.B. appeals the trial court's order removing her two sons from her custody, making them wards of the court, and placing them in the legal custody of the Division of Family Services. She claims that the trial court erred in removing the children from her custody because the Division of Family Services failed to comply with multiple statutory provisions governing juvenile proceedings. M.B. further claims that the State failed to show by clear, cogent, and convincing evidence that the best interests of the children were served by taking custody of them.

## I.   FACTUAL   AND   PROCEDURAL BACKGROUND

M.B. (hereinafter "Mother") is the mother of two sons, R.B., age seven, and T.B., age six.[1]  On June 21, 1995, the juvenile officer filed two Petitions alleging that R.B. and T.B. were within the juvenile court's jurisdiction under Section 211.031.1(1)[2] in that they were "without proper care, custody, support, and supervision in that [they] have alleged acts of sexual abuse and misconduct against the natural mother" and in that Mother had failed to provide necessary medical treatment for R.B. On that same day, Judge Blaeuer ordered that R.B. and T.B. be placed in the temporary legal custody of the Missouri Division of Family Services (DFS) and be placed in foster care. R.B. and T.B. were placed in the home of William and Cinda Wyatt. The Wyatts had previously helped Mother care for R.B. and T.B. two to three days a week from 1992 until the children were placed in their custody in June 1995.

The court appointed counsel for Mother on July 17, 1995. He filed a number of motions on Mother's behalf, including a motion for change of judge which was granted on August 31, 1995. Mother filed her first request for trial setting on December 5, 1995. The case was set for January 3, 1996. On that date, Mother was permitted supervised visitation, and the case was continued to January 12, 1996. On the latter date, counsel for Mother requested, and was given, a continu-

ance. On January 19, 1996, the juvenile officer filed Second Amended Petitions alleging that the boys had been exposed to pornography, they had been physically abused by Mother, T.B. had been sexually molested by Mother and her paramour, and R.B. had been deprived of medical care by Mother.

Mother's counsel later requested and was granted a change of judge for cause. A new judge was appointed on March 18, 1996. The following month, Mother filed her first motion for visitation, alleging visitation was not being permitted in the manner agreed to when the continuance was granted. Judge Carroll M. Blackwell scheduled a hearing on the Petitions and on Mother's motion for visitation for August 22, 1996. No objections to this proposed date appear in the record. The hearing was held on August 22, 1996, as scheduled. One month later, on September 26, 1996, Judge Blackwell found that the allegations contained in the Petitions were true, that the children were in need of proper care, treatment, and custody, and that the children were subject to the court's jurisdiction. He ordered that R.B. and T.B. be made wards of the court, be placed in the legal custody of DFS, and be placed in foster care. Mother's appeal followed.

## II.   STANDARD OF REVIEW

We will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976); *In Interest of M.R.F.,* 907 S.W.2d 787, 789 (Mo.App.1995); *In Interest of D.D.H.,* 875 S.W.2d 184, 185 (Mo.App.1994). We view the evidence and all reasonable inferences therefrom in the light most favorable to the juvenile court's judgment. *Id.*

## III.   ASSUMPTION   OF   TEMPORARY LEGAL   CUSTODY   PENDING HEARING

Mother claims in her first Point Relied On that her right to due process was violated by

1.   M.B. also has two other children who are not at issue in this appeal.

2.   All statutory references are to RSMo 1994, unless otherwise indicated.

the court's assumption of custody and placement of the children in foster care because Mother's contact with the children was "cut off for a long period," because services were not provided in the home, and because the evidence did not support the allegations of the Petitions. The argument portion of Point I fails to substantially follow the Point, however. In the argument Mother asserts that the juvenile court cannot take custody of her children based on mere allegations in the Petition and that it must return the children to her unless and until it makes factual findings of neglect and abuse.

These arguments are not preserved for review, for numerous reasons. First, although Mother's Answer generally claimed, in response to the juvenile officer's allegation in paragraph 4(e) that the children were in need of care and treatment because they had been neglected, that Mother had been denied due process and equal protection of the laws, Mother made no allegation that the court's assumption of custody of the children pending a hearing violated her Constitutional rights because the court failed to place the children in the home prior to the hearing. Therefore, Mother has failed to preserve this point for appellate review. *Artman v. State Bd. of Registration for Healing Arts*, 918 S.W.2d 247, 252 (Mo. banc 1996). In addition, as already noted, the argument portion of the Point does not substantially follow the Point Relied On. This violates Rule 84.04(e), and also fails to preserve the matters in the Point for review. *In re Marriage of Taillon*, 939 S.W.2d 570, 571–72 (Mo.App.1997).

Because this matter involves child custody, however, we have reviewed the substance of the arguments for plain error. To the extent that Mother is arguing that Section 211.031 does not permit the court to permanently remove her children from her home based on mere allegations of abuse or neglect, she is of course correct. That is not what occurred here, however. The allegations of the Petition filed by the Juvenile Officer simply served to invoke the court's jurisdiction by alleging, pursuant to Sections 211.091 and 211.031.1(1), that the children were in need of care and treatment. As required by Section 211.181, a hearing was then held to determine whether the facts alleged were true and whether the children were in need of care and treatment pursuant to Section 211.031. At this hearing, the juvenile officer was required to prove by clear and convincing evidence that each child was in need of care and treatment. *M.R.F.*, 907 S.W.2d at 789; *D.D.H.*, 875 S.W.2d at 186.

That is exactly what occurred here. At the hearing held on August 22, 1996, the juvenile court granted DFS legal custody of the children only after examining the evidence and finding that the allegations of abuse and neglect in the Petition were true. No constitutional violation occurred here.

Mother really appears to be arguing in the argument portion of Point I and of Point II that it is the Missouri statutes, not the Constitution, which required the court to place the children in her care pending the final hearing on the Petition. We note, first, that the final hearing has already occurred, and thus the allegation that the trial court erred in not giving her custody of the children pending the hearing is moot. We also note, however, that Mother's interpretation of the relevant statutes is incorrect.

Mother argues that Sections 211.011 and 211.141 mandate that the children be placed back in the home pending the hearing on the Petition. Section 211.011, as in effect at the time the Petitions were filed, stated:

This chapter shall be liberally construed, therefore, to the end that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control, *preferably in his own home*, as will conduce to the child's welfare and the best interests of the state and that when such child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to that which should have been given him by them.

§ 211.011 (emphasis added). As is evident, this Section only creates a preference for home placement; it does not set out an absolute requirement that the children be placed in the home. As amended in 1995, after the court had taken temporary custody of the

children, the revised Section does not mention any preference for home placement.

Mother's reliance on Section 211.141 is similarly unavailing. At the time the Petitions were filed, that Section provided, and has since continued to provide, that if a child has been taken into custody, "the person taking the child into custody shall, *unless it has been otherwise ordered by the court,* return the child to his parent." § 211.141.1 (emphasis added). The section thus explicitly recognizes that the court may order someone other than the parent to have custody of the child.

This provision for a court order is mirrored by Section 211.101, which authorizes the juvenile court to take temporary custody of a child prior to a hearing on the Petition as follows:

> If it appears that the child or person seventeen years of age is in such condition or surroundings that his welfare requires that his custody be immediately assumed by the court, the judge may order, by endorsement upon the summons, the officer serving it to take the child or person seventeen years of age into custody at once.

§ 211.101.3. Here, Judge Blaeuer issued an order the same day the Petition was filed placing the children in the temporary custody of DFS pending a hearing. The order stated that based on the information furnished by the juvenile officer it appeared to the court that the protective custody of the children was "required pending the hearing upon a petition filed in this cause, for the reason that there is reasonable cause to believe that said juvenile comes within the purview of Subdivision (1) of Section 211.031." There is no merit to Mother's contention that the children were improperly taken from her custody pending the hearing.

## IV. FAMILY PRESERVATION SCREENING

Mother also claims in Point II that the trial court erred in taking custody of the children because DFS failed to conduct a family preservation screening within 72 hours after the children were removed from the home, as is required by Section 211.180. Unfortunately, the record contains no evidence regarding whether or not this screening was performed. Moreover, Mother failed to raise this point in the trial court. This Court will not convict the trial court of error on an issue that was not raised below. *Ireland v. Ireland,* 914 S.W.2d 426, 430 (Mo. App.1996); *Khulusi v. Southwestern Bell Yellow Pages, Inc.,* 916 S.W.2d 227, 231 (Mo. App.1995).

The reason for this rule is evident here. If the issue had been raised below, then the parties could have presented evidence as to whether there had been such screening. Because of the failure to raise this issue, there is no evidence in the record either way, and the parties make contrary claims without supporting record evidence. It is to avoid just this type of situation that the rules require claims to be raised in the trial court in the first instance so that the trial judge can rule on them and can correct any errors at that time. This was not done here, and the point is not preserved for review.

## V. SUBSTANTIAL COMPETENT EVIDENCE SUPPORTED THE JUDGMENT

In her third Point Relied On, Mother attacks the sufficiency of the evidence, claiming that the Juvenile Officer failed to show by clear, cogent, and convincing evidence that the alleged abuse or neglect had occurred. She appears to be arguing that, considering all of the evidence, the evidence just did not support the judgment.

Review of the argument portion of the brief reveals, however, that Mother is really arguing that the trial court erroneously admitted hearsay evidence and that without this evidence, there would not have been sufficient evidence to support the judgment. Because this argument was not made in the Point Relied On—the latter does not even mention hearsay—it is not preserved for review. *Unlimited Equip. Lines, Inc. v. Graphic Arts Centre, Inc.,* 889 S.W.2d 926, 932 n. 1 (Mo.App.1994).

Even were we to overlook the deficiency in the Point Relied On, we could not consider the merits of the claim that the trial court improperly admitted hearsay evidence.

Review of the argument section of the brief permits us to conclude that Mother claims that it was error to consider the DFS files on the children, consisting of the reports of the juvenile officer, DFS, the police, and counselors who had seen the children, and other matters, because the reports contained hearsay. The entire DFS files were not hearsay, however, and Mother failed to specify for the court below exactly which parts of the file were excludable on this basis. Moreover, while it appears that various portions of the DFS file were admitted as exhibits, the entire file itself was never admitted as an exhibit, nor was it included in the record on appeal. We thus are unable to review the claim that the trial court erroneously admitted hearsay contained in the files. *In Interest of S.G.,* 779 S.W.2d 45, 52 (Mo.App.1989).

■ Mother similarly argues that the trial court erroneously permitted the admission of statements of the children, despite objection by Mother. She offers no record citations to support her assertions, however, making it impossible for us to review this point. *McMullin v. Borgers,* 806 S.W.2d 724, 730 (Mo.App.1991) (point did not state with specificity what evidence plaintiff found objectionable, nor did the brief reference specific pages in the legal file or transcript).

■ Even if we were to assume that the court erred in admitting any of the statements of the children or about what the children said, however, the record would support the judgment. "[I]t is nearly impossible in a court-tried case to predicate reversal on the erroneous admission of evidence. Deference is given to the judge's ability to consider that evidence which is relevant and admissible." *In Interest of C.M.W.,* 813 S.W.2d 331, 335 (Mo.App.1991). We review the juvenile court's judgment to see whether it is supported by substantial evidence. *M.R.F.,* 907 S.W.2d at 789; *D.D.H.,* 875 S.W.2d at 185. If so, then we will affirm, even if the evidence would also have supported a contrary judgment. We will not reverse unless, after exclusion of the inadmissible evidence, the remaining evidence is not sufficient to support the court's judgment. *In re S.P.W.,* 707 S.W.2d 814, 816 (Mo.App.1986).

■ Even without relying on the hearsay evidence, there was substantial evidence supporting the juvenile court's determination of physical abuse and neglect. R.B. and T.B. spent a significant amount of time with the Wyatts, often staying at their home for days at a time. At the hearing, Mrs. Wyatt testified that Mother refused to take the children to the doctor. R.B. required surgery to have tubes put in his ears, and it was Mrs. Wyatt, not Mother, who took R.B. to the hospital for this procedure. Mother was forty minutes late arriving at the hospital to sign the consent for the surgery, and then she left before the doctor could talk to her after surgery.

Mrs. Wyatt testified that on one occasion when she picked up the children from Mother, T.B. smelled like kerosene and his clothes were soaked with it. The Wyatts also observed bruises on the children's faces, and Terri Hoskins, a clinical social worker, testified that the children have poor self-esteem and speech delays.

There was also evidence of sexual abuse by Mother. Mrs. Wyatt testified that she personally observed Mother put her tongue in T.B.'s mouth while kissing him and T.B. put his hand between Mother's legs. Mrs. Wyatt went to Mother's home once and found Mother standing naked in front of the children. The children had a problem with touching their genitals inappropriately, and they played with their dolls in a sexual manner. Police officers found pornographic videotapes in Mother's home.

In addition, R.B. and T.B. made statements to the Wyatts, social workers, and police officers which lead to a finding of neglect and sexual abuse. The boys repeatedly stated to various adults, including the Wyatts and a police officer, that Mother and her paramour touched their genitals and performed oral sex on them. R.B. told a social worker that T.B. was Mother's lover. They also said that Mother kicked and hit them.

While Mother introduced contrary evidence and denied that the children were abused or neglected, most of her evidence was directed toward showing that statements made by children are unreliable. It was up to the judge as the trier of fact to determine

what evidence he believed, and he believed the evidence offered by the juvenile officer. We do not second guess such credibility issues on appeal. *In Interest of T.S.*, 925 S.W.2d 486, 487 (Mo.App.1996); *In Interest of J.N.C.*, 913 S.W.2d 376, 379 (Mo.App.1996). Substantial evidence supported the judgment.

For all of these reasons, the judgment is affirmed.

All concur.