**In the Interest of: A.R.,**

**Juvenile Officer, Respondent,**

v.

**R.R. (Putative Father), Appellant.**

**No. WD 73107.**

Missouri Court of Appeals,
Western District.

Feb. 1, 2011.

Daniel G. Barry, for Respondent.

Connor J. Sears, for Appellant.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

R.R. (Father) appeals the juvenile court's disposition judgment committing his son, A.R., to the custody of the Children's Division for placement with his grandmother.[1] On appeal, Father contends that in denying him custody of A.R., the juvenile court exceeded the bounds of its limited jurisdiction, violated procedural and substantive due process, and failed to apply section 211.037, RSMo Cum.Supp.

2009.[2] Father also argues that even if section 211.037 was applied, the statute is unconstitutional. The judgment of the juvenile court is affirmed.

## Factual and Procedural Background

A.R. was born on August 28, 2009, out of wedlock. The Children's Division received a Newborn Crisis Assessment advising that the child's mother (Mother) tested positive for cocaine and marijuana at the time of the birth. The infant tested positive for marijuana only. Mother reported that she had used marijuana a couple of times during the end of the pregnancy due to the stress of being homeless and having no support but denied using cocaine. She also reported that she had been diagnosed with bipolar disorder but was not taking medication for it. Mother agreed to complete drug treatment. She also named Father as the baby's father but reported that he did not support her or the baby, was homeless and unemployed, and wanted "to smoke pot all day."

Mother attended treatment for a few weeks. The baby was in her custody, and they lived with various relatives and friends. In December 2009, Mother told her probation officer that she was using PCP and was no longer in treatment.[3] The Children's Division worker informed Mother that if she did not report to and participate in treatment, the Children's Division would seek protective custody of the

---

1. The juvenile officer filed a motion, which was taken with the case, to dismiss or in the alternative to strike Father's brief for failure to comply with the briefing requirements of Rule 84.04. "While not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by the rule violations." *Lewis v. Biegel*, 204 S.W.3d 354, 364 n. 10 (Mo.App. W.D.2006) (internal quotes and citation omitted). Moreover, an appellate court will generally refrain from dismissing appeals involving child custody on the basis of technical violations. *Horinek v. Horinek* (*In re Marriage of Horinek*), 41 S.W.3d 897, 899 n. 2 (Mo.App. S.D.2001). The deficiencies complained of by the juvenile officer do not impede the disposition of this appeal. The motion is denied.

2. All statutory references are to RSMo Cum. Supp.2009 unless otherwise indicated.

3. Mother was on probation for convictions in Arkansas for robbery and possession of drugs.

baby. On January 12, 2010, Mother reported to ReDiscover, a substance abuse treatment center, and completed a drug test. The next day, she tested positive for cocaine, marijuana, and PCP. She was told that she needed inpatient treatment, but she refused. She was again told that if she did not do inpatient treatment, the Children's Division would seek custody of the baby. While holding the child, Mother became belligerent and erratic and cursed and threatened the staff. The Children's Division worker called the police, and the child was taken into temporary protective custody.

The Juvenile Officer filed a petition on January 14, 2010, alleging that A.R. was without proper care, custody, and support and subject to the juvenile court's jurisdiction under section 211.031.1(1) because Mother's mental health and use of illegal substances impaired her ability to parent. The petition alleged that Father was the putative father and that he was homeless. Father attended the protective custody hearing held January 15, 2010. At the hearing, the juvenile court placed A.R. in the temporary legal custody of the Children's Division for placement with his maternal grandmother, ordered supervised visitation with Father, ordered paternity testing, and appointed counsel for Father.

On January 21, 2010, the Juvenile Officer filed a first amended petition. It added a second count alleging that A.R. was without proper care, custody, and support and subject to the family court's jurisdiction under section 211.031.1(1) because Father used illegal substances and his ability to parent, his residence, and his ability to care for the child were unknown. Father's appointed attorney appeared for Father at the case management hearing on February 3, 2010. At the hearing, the juvenile court set an adjudication hearing for March 9, 2010. It also ordered that A.R. remain in the custody of the Children's Division for placement with his grandmother. Finally, the juvenile court ordered Father to participate in drug testing.

On March 9, 2010, the adjudication hearing was held. Father was present with his attorney. Mother was not present because she was incarcerated. The juvenile officer dismissed count 2 of the first amended petition concerning the allegations regarding Father. Evidence was presented regarding the allegations about Mother in count 1. The juvenile court found that clear, cogent, and convincing evidence supported the allegations of count 1 and assumed jurisdiction over the child. The disposition hearing was then immediately held. The juvenile officer offered exhibit 1, the social file containing the Children's Division's reports. Father objected based on hearsay, but the court admitted the exhibit into evidence. No other evidence was presented by any party. The court then heard recommendations from the Children's Division and the guardian ad litem. Father asked that he be given "some custody [of the child] at this time." In the alternative, he asked that the court order that once the home study was completed, he be awarded custody of the child. At the end of the hearing, the juvenile court ordered that A.R. remain in the custody of the Children's Division for placement with his grandmother. Regarding Father, the court stated, "So before I change custody I want to see clean UAs, a clean hair test, and some— and some stability as far as with where dad is; where he's staying, and that he can take care of this child, be stable enough to do that. So that's what I want to see."

The next day, the juvenile court entered its findings, recommendations, and judgment in which it found at disposition that "continued placement of the child in the home or with the parents is contrary to

the welfare of the child due to the mother and father not completing services at this time." It ordered that A.R. remain in the custody of the Children's Division for placement with his grandmother and that Father complete a psychological evaluation, participate in parenting classes, and submit to a hair test and be subject to random urinalysis with DRAGNET. The court further ordered that contact between the child and Father shall be as recommended by the Children's Division.

Thereafter, Father filed a motion for rehearing arguing that the judgment disregarded his constitutionally protected fundamental liberty interest to raise his own child and violated section 211.037. The juvenile court overruled Father's motion. This appeal by Father followed.

## Standard of Review

■ The decision of the juvenile court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Waint v. M.B. (In Interest of T.B.),* 963 S.W.2d 252, 254 (Mo.App. W.D. 1997). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the juvenile court's judgment. *T.B.,* 963 S.W.2d at 254.

## Authority of the Juvenile Court & Section 211.037

■ In his first point on appeal, Father asserts that the juvenile court's disposition judgment denying him custody of A.R. was without statutory basis and exceeded the limited power of the court. He contends that the juvenile court had no statutory authority to deny him custody of his child when there was no allegation or proof of any wrongdoing against him. In his third point on appeal, Father claims that the juvenile court erred in not applying section 211.037 pertaining to nonoffending parents in the disposition phase of the proceeding. He contends that he was entitled to custody of A.R. under the statute. These points are discussed together.

■ The purpose of Chapter 211, which governs the juvenile court, is "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." § 211.011, RSMo 2000. Section 211.031 is the abuse and neglect statute. The hearing in a proceeding under section 211.031.1 is bifurcated. Rules 124.06 and 124.07; *In the Interest of D.K.S.,* 106 S.W.3d 616, 619 (Mo.App. W.D. 2003). The first phase is adjudication where the juvenile court determines whether the juvenile officer established, by clear and convincing evidence, that the court should assume jurisdiction over the child. *D.K.S.,* 106 S.W.3d at 619. In the second phase, disposition, the juvenile court determines the disposition or treatment that should be ordered for the child. *Id.*

■■ "To assert jurisdiction under section 211.031.1(1), the juvenile court must find clear and convincing evidence that the child is in need of care because the parent has neglected to provide the care necessary for the child's well-being." *In the Interest of G.C.,* 50 S.W.3d 408, 410 (Mo. App. E.D.2001). *See also In the Interest of S.H. v. O.M.H.,* 796 S.W.2d 71, 72 (Mo. App. E.D.1990). Specifically, section 211.031 provides, in pertinent part:

1. Except as otherwise provided in this chapter, the juvenile court ... shall have exclusive original jurisdiction in proceedings:

(1) Involving any child ... who is alleged to be in need of care and treatment because:

(a) The parents, or other persons legally responsible for the care and support of the child ... neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his or her well-being; ...

(b) The child ... is otherwise without proper care, custody or support; ....

Once a court has acquired jurisdiction over a child in a proper proceeding, the child becomes a ward of the court, and the court then has the inherent jurisdiction to award custody as it deems will preserve and protect the child's welfare. *State ex rel. Catholic Charities of St. Louis v. Hoester*, 494 S.W.2d 70, 73 (Mo. banc 1973); *S.H.*, 796 S.W.2d at 72.

In this case, the juvenile court assumed jurisdiction based on the adjudication of allegations that A.R. was without proper care, custody, or support necessary for his well-being and, more specifically, the mental health of Mother, who had custody of A.R., and her use of illegal substances impaired her ability to parent. The juvenile officer established these allegations at the adjudication hearing by clear and convincing evidence, and the juvenile court properly assumed jurisdiction over A.R. Once the juvenile court acquired jurisdiction, it properly proceeded to disposition.

Father does not contend on appeal that the juvenile court erred in assuming jurisdiction over A.R. based on the allegations regarding Mother. Instead, he asserts that the court should have placed A.R. in his custody as the nonoffending parent in section 211.037.

Section 211.037 provides:

1. For purposes of proceedings and investigations conducted pursuant to this chapter, children shall be promptly returned to the care and custody of a nonoffending parent entitled to physical custody if:

(1) The parents have continuously maintained joint domicile for a period of six months prior to the alleged incident or the parents are maintaining separate households; and

(2) A preponderance of the evidence indicates that only one of the parents is the subject of an investigation of abuse or neglect; and

(3) The nonoffending parent does not have a history of criminal behavior, drug or alcohol abuse, child abuse or child neglect, domestic violence, or stalking within the past five years; and

(4) The parents are maintaining joint domicile and the offending parent is removed from the home voluntarily or involuntarily, or the parents live separately and the child is removed from the home of the offending parent; and

(5) A nonoffending parent requests custody of the child and agrees to cooperate with any orders of the court limiting contact or establishing visitation with the offending parent and the nonoffending parent complies with such orders. When the parents maintain joint domicile or comply with court-ordered visitation, there shall be a rebuttable presumption that the nonoffending parent has not committed any violation of section 568.030, 568.032, 568.045, 568.050, or 568.060, RSMo, or has not engaged in any conduct that would constitute child abuse or neglect under chapter 210, RSMo. In order to rebut the presumption there must be a finding of actual harm or endangerment to the child if the child is placed in the custody of the nonoffending parent.

2. Nothing in this section shall prevent the division or the court from exercising its discretion to return a child or children to the custody of any individual.

While section 211.037 creates a preference that a child be placed in the care and custody of the nonoffending parent, it does not set out an absolute requirement. First, certain conditions must be met before a child is placed with a nonoffending parent. § 211.037.1(1)–(5). Additionally, subsection 2 of the statute specifies that the decision regarding a child's custody remains in the discretion of the juvenile court.

At disposition, the juvenile officer offered and the juvenile court admitted into evidence the social file containing the Children's Division's reports. These reports contained evidence that Father abuses marijuana. Mother reported to Children's Division workers that Father "smoked too much pot," wanted to "smoke pot all day," and "always has a large amount of marijuana in his possession and uses daily." The reports also stated that Father "admits to smoking marijuana on occasions ... and agreed to participate in a substance abuse program." A report prepared a few days before the adjudication and disposition hearing showed that while the Children's Division had referred Father to some treatment programs and authorized him to participate in a hair test analysis and random urinalysis with DRAGNET, he was not yet enrolled or participating in a program, and DRAGNET had twice been unsuccessful in conducting a hair test on Father. Finally, the reports included evidence that Father was either homeless or temporarily living with a cousin. He was unemployed and unable to provide for the child financially. This evidence showed that Father did not meet the condition for placement of subsection 3 of section 211.037.1 regarding a history of

drug abuse allowing the juvenile court to exercise its discretion to place the child elsewhere. *See D.K.S.*, 106 S.W.3d at 618–19 (where, at disposition hearing, court properly heard evidence on issue of sexual abuse and denied father custody or visitation based on such evidence even though court originally asserted jurisdiction over child at adjudication based on the unsanitary, unsafe, and injurious condition of family house). The juvenile court did not err in denying Father custody of A.R. at the disposition hearing. Points one and three are denied.

### Constitutional Challenges

 In his second point, Father contends that the juvenile court's disposition judgment deprived him of his fundamental right to have custody of his own son in clear violation of procedural and substantive due process. In his last point on appeal, Father argues that section 211.037 is unconstitutional because it allows a juvenile court to indirectly terminate custody of a nonoffending parent without sufficient procedural due process.[4]

 The juvenile officer asserts that Father failed to preserve these constitutional issues for appellate review.

"To properly raise a constitutional issue, the party must (1) raise the question at the first available opportunity; (2) specifically designate the constitutional provision alleged to have been violated, such as by explicit reference to the article and section, or by quotation from the particular provision; (3) state the facts showing the violation; and (4) preserve

---

4. This appeal was originally filed in the Missouri Supreme Court. There, the juvenile officer filed a motion, which was later taken with the case, to dismiss for lack of standing or jurisdiction to invoke the Missouri Supreme Court jurisdiction over the constitutionality of a statute. The Supreme Court transferred the case to this court. The motion to dismiss is denied as moot.

the constitutional question throughout for appellate review."

*Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 525 (Mo.App. E.D.2007). "Additionally, a constitutional challenge to a statute must not only have been presented to the trial court, but the trial court must have ruled thereon." *S.A. v. Miller*, 248 S.W.3d 96, 101 (Mo.App. W.D.2008)(internal quotes and citation omitted). " 'An attack on the constitutionality of a statute is of such dignity and importance that the rec-, ord touching such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal.' " *Strong*, 261 S.W.3d at 525 (quoting *Land Clearance for Redev. Auth. of Kansas City, Mo. v. Kan. Univ. Endowment Ass'n*, 805 S.W.2d 173, 176 (Mo. banc 1991)). "The purpose of this requirement is to give the trial court an opportunity to fairly identify and rule on the issues and to prevent surprise to the opposing party." *S.A.*, 248 S.W.3d at 101 (internal quotes and citation omitted).

It is questionable whether Father preserved his procedural and substantive due process claims for appellate review. He failed to raise his procedural due process claim in the juvenile court and only vaguely raised his substantive due process claim in his motion for rehearing below. Regardless, the first amended petition seeking to invoke the juvenile court's jurisdiction under section 211.031.1(1) upon allegations that A.R. was without proper care, custody, and support necessary for his well-being sufficiently notified Father of the pendency of the proceeding. With his appointed attorney, he attended and fully participated in the adjudication and disposition hearing as well as the prior proceedings. He was given the opportunity to cross-examine witnesses and present evidence. To the extent that Father argues that he was denied custody of A.R. without any allegation or finding that he had done anything wrong, that is not what occurred here. As discussed above, the juvenile court exercised its discretion and granted custody of A.R. to the Children's Division for placement with his grandmother only after examining the evidence of Father's history of drug abuse, which demonstrated that Father did not meet the condition for placement under the nonoffending parent statute. No constitutional violations occurred here. Point two is denied.

Finally, Father failed to raise his constitutional challenge to section 211.037 in the juvenile court. Accordingly, the claim is not preserved for appellate review. Point four is denied.

The judgment of the juvenile court is affirmed.

All concur.