In the Interest of Y.S.W. and R.C.W.

No. ED 98899.

Missouri Court of Appeals,
Eastern District,
Division IV.

June 28, 2013.

George E. Tillman, St. Charles, Mo, for Appellant.

Rebeca M. Navarro–McKelvey, Juvenile Officer, St. Charles, MO, for Respondent.

Charles C. Curd, Weldon Springs, MO, for Juveniles.

*Introduction*

KURT S. ODENWALD, Judge.

Tasha Warlick ("Mother") appeals from the judgment of the juvenile court adjudicating the minor children of her and her former husband Christopher Warlick ("Father"). Based upon Mother's allegation that Father abused the children, the Juvenile Office of St. Charles County ("Juvenile Office") filed a petition in the juvenile court seeking adjudication of the children and placing the children in the custody of the Children's Division of the State of Missouri, Department of Social Services ("Children's Division"). The juvenile court found that the allegations of sexual abuse contained in the petition were not substantiated. The juvenile court nevertheless found the children to be without proper care, custody, and support because of the parents' toxic relationship, and ordered the children to remain in the protective and legal custody of the Children's Division. Mother appeals, alleging that the juvenile court erred in adjudicating the children on allegations not contained in the Juvenile Office's petitions, and that the juvenile

court erred in not granting her motion for recusal. Because the juvenile court erred in adjudicating the children on a ground not asserted in the petitions before the court, we reverse.

### Factual and Procedural History

Mother and Father were married on April 10, 1999. The marriage produced two children; Y.S.W. was born on March 21, 2001, and R.S.W. was born on March 24, 2002. On October 27, 2005, Mother and Father were divorced. The trial court awarded Mother and Father joint legal and physical custody.

In July 2011, the Juvenile Office filed separate petitions in the juvenile court alleging that Y.S.W. and R.C.W. were in need of care and treatment, and asking the juvenile court to assert jurisdiction over both children. In its Petition related to Y.S.W., the Juvenile Office alleged that Y.S.W. was in need of care and treatment because Father subjected Y.S.W. to sexual contact. In its First Amended Petition related to Y.S.W., the Juvenile Office alleged that Y.S.W. was in need of care and treatment because Father subjected Y.S.W. to sexual contact, and because the parents collectively failed to provide eyeglasses to Y.S.W. as prescribed by a doctor. In its Petition related to R.C.W., the Juvenile Office alleged that R.C.W. was in need of care and treatment because Father had sexual contact with Y.S.W., R.C.W.'s brother. In its First Amended Petition related to R.C.W., the Juvenile Office alleged that R.C.W. was in need of care and treatment because Father had sexual contact with Y.S.W., and because the parents collectively "did neglect to provide the occupational and physical therapy required for [R.C.W.'s] growth and development although [the therapies were] prescribed by medical personnel." Mother asserts in her brief that all claims of medical neglect against Mother were dropped by the Juvenile Office prior to trial.[1] The petitions filed by the Juvenile Office contained no allegations that the children were in need of care and treatment due to Mother and Father's troubled personal relationship.

On March 21, 2012, and April 27, 2012 the juvenile court held a hearing on both petitions, which collectively alleged solely that Y.S.W. and R.C.W. were in need of care and treatment because Father had engaged in sexual contact with Y.S.W. During the course of the hearings, Mother made an oral motion that the judge recuse himself, which the juvenile court denied without holding a hearing on the motion. After the hearings, the juvenile court did "not find clear and convincing evidence that Father sexually abused [Y.S.W.] by subjecting [Y.S.W.] to sexual contact or that [R.C.W.] is at risk of sexual abuse because Father had sexual contact with [Y.S.W.]." The juvenile court made no findings and did not address any claims of medical neglect by either Mother or Father. However, the juvenile court stated in its judgment that:

> This Court has no conflicting evidence that the emotional health of both [Y.S.W.] and [R.C.W.] has been, and continues to be, significantly impaired by the constant focus of both Mother and Father on their individual selfish interests rather than on the best interests of the minor children.
>
> . . .

1. The legal file provided by Mother does not reflect that the charges of medical neglect against Mother were ever dropped. However, our decision is not altered by the incompleteness of the legal file in this respect, or by the truth of Mother's claim that the counts against her were dropped.

[T]herefore, [Y.S.W.] and [R.C.W.] cannot be reunified together with Mother or together with Father without significant intervention into the relationship of the minor children with each other and without a determination of each parent's ability to end the "war" and focus on the best interests of the minor children

Accordingly, the juvenile court held that Y.S.W. and R.C.W. were without proper care, and that the best interest of the children required that they remain in protective custody, and in the legal custody of Children's Division. Mother now appeals.

### Points on Appeal

In her first two points on appeal, Mother argues that the trial court erred in adjudicating the children within the jurisdiction of the juvenile court based upon an allegation of abuse or neglect that was not alleged in the Juvenile Office's petition. In her third point, Mother asserts that the juvenile court erred in denying Mother and the Juvenile Office's joint oral motion for recusal.

### Standards of Review

■ We will affirm the judgment of the juvenile court unless there is no substantial evidence to support it, it is against the weight of the evidence at trial, or it erroneously declares or applies the law. *In re A.R.*, 330 S.W.3d 858, 862 (Mo.App. W.D. 2011).

■ We will affirm a denial of a motion for recusal unless the court abused its discretion. *Moore v. Moore*, 134 S.W.3d 110, 113 (Mo.App. S.D.2004).

### Discussion

■ The focus of Mother's initial points on appeal is the authority of the juvenile court to adjudicate the children, and enter judgment ordering that they remain in the protective and legal custody of the Children's Division on a ground not asserted by the Juvenile Office in its petition for adjudication.

Chapter 211 of the Revised Missouri Statutes governs all proceedings brought in juvenile court, including the determination of whether the juvenile court has jurisdiction over a matter. When the Juvenile Office files a petition alleging that a child is without proper care and treatment under Chapter 211, the juvenile court conducts a bifurcated hearing. *A.R.*, 330 S.W.3d at 862. The juvenile court first conducts an adjudication hearing, wherein the juvenile court must determine whether clear and convincing evidence exists that the child is in need of care because the parents neglected to provide care necessary for the child's well being. *Id.*; Section 211.031; Rule 124.06(c). Only if the juvenile court finds that the allegations of the Juvenile Office's petition are proven by clear and convincing evidence may the juvenile court assert jurisdiction over the child. *See In re D.K.S.*, 106 S.W.3d 616, 619 (Mo.App. W.D.2003). If the juvenile court assumes jurisdiction over the child following the adjudication hearing, the juvenile court subsequently conducts a separate disposition hearing to determine what placement, treatment, and care is in the best interests of the child. *Id.*; Rule 124.06(e).

In this case, the Juvenile Office filed petitions alleging the children were in need of care based upon allegations that Father had committed sexual abuse, and claims of medical neglect. Mother's brief asserts, and the legal file before us does not contradict her assertion, that the Juvenile Office dismissed the claims related to medical neglect as to Mother. As such, the only allegations in the Juvenile Court's amended petitions relating to both Y.S.W. and R.C.W. were whether the children were in need of care as a result of

Father's purported sexual abuse, and possibly whether Father committed medical neglect. The question Mother raises in her first two points on appeal is whether the trial court erred in adjudicating the children as being in need of care and treatment because the parents' troubled relationship had a harmful effect on the children, allegations not contained in the Juvenile Office's petitions. After careful review of the record, we find that the trial court lacked authority for its finding and erred in entering its judgment.

The scope of the adjudication hearing is carefully defined by Rule 124.06, which, *inter alia*, states:

Upon finding that the allegations in the petition or motion to modify are neither admitted nor proved, the court *shall* enter judgment denying the petition and, unless it has prior and continuing jurisdiction:

(1) order that the juvenile be returned to the juvenile's parent, guardian or custodian;

(2) relieve the children's division of custody of the juvenile; and

(3) terminate jurisdiction.

Rule 124.06(d) (emphasis added). The use of the word "shall" evidences that the juvenile court is divested of any authority to adjudicate the children if it finds that the allegations in the Juvenile Office's petition are not supported by clear and convincing evidence. *See D.K.S.*, 106 S.W.3d at 619 ("if at least one basis for jurisdiction over the child [alleged in the Juvenile Office's petition] has been established by clear and convincing evidence, the court may proceed to disposition."). The juvenile court in this case specifically found that the record did not contain clear and convincing evidence that Father committed any sexual abuse. Although the record before us is unclear as to whether the claims of medical neglect were dismissed prior to the adjudication hearing, the record is clear that the juvenile court made no finding that any claim of medical neglect was supported by sufficient competent evidence. Accordingly, pursuant to Rule 124.06(d), the juvenile court was without authority to adjudicate the children. Consequently, the juvenile court erred when it entered judgment ordering the children to remain in the custody of the Children's Division.

Our holding in this case is further supported by fundamental principles of due process. It is well established that litigants facing deprivations are guaranteed notice of, and the opportunity to defend against, the charges against them. *In re E.A.C.*, 253 S.W.3d 594, 601 (Mo.App. S.D.2008). Due process mandates that parents in juvenile court facing allegations of abuse or neglect are entitled to the same notice of the specific allegations of abuse or neglect against them, and the opportunity to defend against those charges. *See id.* In this case, by adjudicating the children based upon a finding not alleged in the petitions before it, the juvenile court's judgment deprived Mother of notice and the opportunity to contest and present a defense against any claim that the parents' relationship had a harmful effect on the children.

The record suggests that the trial court's ruling was strongly influenced by its prior knowledge and dealings with Mother, Father and children. We recognize the challenge of the juvenile court in deciding what is in the best interest of the child. At the same time, our courts may not disregard constitutional restrictions imposed on our authority by statute or due process. Mother's first and second points on appeal are granted. Because Mother's first two points are dispositive, we do not reach Point Three of her appeal.

*Conclusion*

The judgment of the juvenile court adjudicating the children is reversed, and the juvenile court's subsequent judgment ordering disposition is vacated.

LAWRENCE E. MOONEY, P.J., and PATRICIA L. COHEN, J., concur.

