**In the Interest of K.S.-W., Plaintiff.**

**C.P.S., Appellant;**

**D.B.W, Appellant Pro Se, Appellant,**

**v.**

**Juvenile Officer, Respondent;**

**Missouri Children's Division, Respondent, Respondent.**

No. WD 75753.

Missouri Court of Appeals, Western District.

Oct. 22, 2013.

Donald Forrester, Valerie Sieverling, Laurie Snell, Kansas City, for appellant.

Gary Gardner, Jefferson City, for respondent.

Before Division One: VICTOR C. HOWARD, P.J., JOSEPH M. ELLIS, and ANTHONY REX GABBERT, JJ.

ANTHONY REX GABBERT, Judge.

C.P.S. and D.B.W. (Appellants) appeal the circuit court's judgment adopting the commissioner's findings that sustained Juvenile Officer allegations that K.S.-W. was in need of care and treatment and subject to the jurisdiction of the court pursuant to Section 211.031.1, RSMo. Cum.Supp.2010, due to parental neglect.

In December of 2003, when K.S.-W. was ten years old, the Children's Division placed K.S.-W. in the foster home of Appellants after he was abused in his prior foster home. Appellants adopted K.S.-W. and his brother, D.J., in December of 2006.

In August of 2010, when K.S.-W. was seventeen years old, he was placed in the Woodward Sexual Offender Program. In the program, participants are required to take a polygraph test and discuss incidents of sexual abuse they perpetrated along with any sexual acts perpetrated on them. During the polygraph test, the examiner asked K.S.-W. if he had ever been sexually abused at home and he initially said, "No." The test indicated that K.S.-W. failed that question and the examiner and staff discussed this with him further. K.S.-W. then reported that he had improperly touched his older half-brother who had cerebral palsy, that he had molested a current foster brother, and that Appellant C.P.S. had abused him. K.S.-W.'s allegations with regard to C.P.S. were "hotlined" to the Children's Division and Children's Division staff interviewed Appellants on September 24, 2010, and again on December 16, 2010, regarding the allegations.

Based on those interviews, the Juvenile Officer filed a petition on March 30, 2011, alleging that K.S.-W. was in need of care and treatment pursuant to Section 211.031

because of Appellants' "neglect." The petition alleged that K.S.-W. had a history of sexual abuse, that K.S.-W. had exhibited sexualized behaviors, and that he had been diagnosed with Reactive Attachment Disorder. The petition alleged that, despite Appellants' knowledge of K.S.-W.'s history and behaviors, the parents admitted that they had "engaged in 'cuddle time' with K.S.-W. in the parents' shared bed at times when both parents were naked and covered with only a sheet or blanket." The petition alleged that Appellant C.P.S. admitted to Children's Division staff that, on more than one instance during cuddle time with the child, C.P.S.'s penis was erect. The petition alleged that C.P.S. admitted that he took K.S.-W. on a biking trip, during which trip he and K.S.-W. slept naked in the same bed and once engaged in cuddle time during that trip. Finally, the petition alleged that Appellant D.B.W. knew or should have known of C.P.S.'s behaviors with K.S.-W. and failed or refused to protect the child from C.P.S.

The circuit court heard evidence regarding the Juvenile Officer's petition on May 17, 2011, July 8, 2011, August 26, 2011, November 22, 2011, February 24, 2012, March 22, 2012, April 5, 2012, and April 6, 2012. On September 21, 2012, the court sustained each allegation in the petition and found K.S.-W. to have been abused and/or neglected by Appellants and subject to the jurisdiction of the court pursuant to

Section 211.031.1. Appellants appeal the court's judgment.

■ We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re A.G.R.*, 359 S.W.3d 103, 108 (Mo.App.2011). We view the evidence and all reasonable inferences in the light most favorable to the judgment and defer to the credibility determinations of the circuit court.[1] *Id.* Pursuant to Rule 116.02, at all juvenile hearings involving adjudication of a petition's allegations, the rules of evidence shall apply. The court's evidentiary decisions are reviewed for abuse of discretion. *McGuire v. Kenoma*, 375 S.W.3d 157, 164 (Mo.App.2012).

■ Appellants raise four points on appeal. As we reverse and remand on their third point, we do not address their first, second, and fourth points. In Appellants' third point on appeal, they contend that the court erred in considering and relying on evidence irrelevant to the allegations in the petition, or hearsay, because the court sustained objections to the admission of such evidence or stated that no consideration was being given to evidence that did not support allegations in the petition.

---

1. In addition to this standard of review, the Juvenile Office sets forth in its brief the standard that " '[i]n any proceeding involving child custody, the consideration of supreme importance which overrides all others is the welfare of the child.' " *In re D.L.W.*, 530 S.W.2d 388, 390–391 (Mo.App.1975). While this standard is requisite for disposition, it is not part of the fact-finding stage of adjudication where the State must first prove the child to be in need of care and treatment pursuant to Section 211.031 before usurping parental judgment regarding the best interests of the child. *See In re B.H.*, 348 S.W.3d 770, 775–

76 (Mo. banc 2011). Additionally, we note that while the circuit court found that it was "required to determine issues of 'neglect' in light of societal norms, [*In re*] *A.K.S.*, 602 S.W.2d 848[, 851] (Mo.App.1980), and the minimal standards of care the community will tolerate, *In re C.F.B.*, 497 S.W.2d 831[, 837] (Mo.App.1973)," our courts traditionally have examined "neglect" in light of the Section 210.110, RSMo Cum.Supp.2012, definition for "neglect." *See In re J.M.*, 328 S.W.3d 466, 471 (Mo.App.2010); *In re B.C.K.*, 103 S.W.3d 319, 327–28 (Mo.App.2003); *In re L.T.*, 989 S.W.2d 673, 678 (Mo.App.1999).

We agree that the court erred in considering and relying on prejudicial evidence that proved to be irrelevant to the allegations in the petition.

The Juvenile Officer's petition alleged that K.S.-W. was without proper care, custody or support necessary for his well-being and was subject to jurisdiction pursuant to Section 211.031.1 due to parental neglect. The petition then delineated specific admissions that Appellants were alleged to have made with regard to behaviors that the Juvenile Officer considered neglectful. Because of the specificity of the allegations and the fact that the petition focused on admissions by Appellants, not allegations by K.S.-W., the Juvenile Officer objected to, and the court sustained, evidence outside the parameters of those allegations. When the child's therapist testified that it was "likely, from the beginning, that [K.S.-W.] was going to make allegations against his parents, because many children like [K.S.-W.] do," the Juvenile Officer objected. The Juvenile Officer stated: "I'm going to object to the answer and ask that it be stricken. Nowhere in this petition is it contained that [K.S.-W.] made any allegations with regard to the parents. That is not what we are adjudicating." When the therapist testified that children, such as [K.S.-W.] are afraid of abandonment and "frequently have not learned what the truth means," the Guardian Ad Litem objected that the statement had no relevance to the pending allegations. The court sustained the objection and indicated that it would disregard the testimony. The Juvenile Officer reminded the court on several occasions that the petition was to be the court's focus. The court made it clear that it would disregard evidence outside the parameters of the specific allegations in the petition and stated that the court was "only looking at the information in the petition and the information to support it."

The court stated: "I don't care what came out in the C.P.C. interview regarding K.S.-W. . . . . there is no allegations at this point in time that I'm aware of about any statements that K.S.-W. made . . . and I'm not going to consider that . . . . we need to stick to the evidence in the petition and what they were charged with."

Nevertheless, near the end of all the evidence, the court itself questioned Appellant D.B.W. and asked: "I know things came out and people were talking about different things. You said there were five things that [K.S.-W.] said. I'm not going to consider the things that don't go to the allegations in the petition or somewhat might be related to, but can you tell me what the five things [K.S.-W] said [C.P.S.] did at that time?" D.B.W. answered the court. D.B.W. testified that K.S.-W. alleged that: 1) C.P.S took K.S.-W. into a room and showed him how to "jack off;" 2) C.P.S. attempted to help K.S.-W. self suck by pulling his legs down, and then C.P.S. left the room to masturbate; 3) C.P.S. put his penis on K.S.-W. repeatedly when K.S.-W. would come down to C.P.S.'s bed in the middle of the night; 4) C.P.S. "masturbated" K.S.-W; and 5) C.P.S. put his arms around K.S.-W. while C.P.S. masturbated. The court ultimately included all of these assertions in its Findings of Fact, except for the second half of the second allegation that alleges that C.P.S. left the room to masturbate. As each of the court's Conclusions of Law reference Findings of Fact, it is clear that the court relied on its factual findings in arriving at its legal conclusions. The court specifically made as a conclusion of law K.S.-W.'s allegation that "[C.P.S.] taught [K.S.-W.] how to masturbate, and how to self suck."

In the Juvenile Officer's statement of facts in the Juvenile Officer's brief on appeal, the Juvenile Officer includes K.S.-W.'s statements to support that Appellants

neglected K.S.-W. and that the court rightly assumed jurisdiction. The Juvenile Officer argues that the evidence was relevant to the Juvenile Officer's allegation that the child had exhibited sexualized behaviors. The Juvenile Officer also contends that the court was justified in considering these statements because they were admitted without objection.[2]

First, we find K.S.-W.'s allegations regarding alleged behaviors by C.P.S. irrelevant to the Juvenile Officer's allegation that the child exhibited sexualized behaviors. The Juvenile Officer did not allege that Appellants caused K.S.-W.'s sexualized behaviors, but that the child had a history of sexualized behaviors and sexual abuse prior to and after being adopted by Appellants and, despite knowledge of the child's history, the parents engaged in neglectful conduct. The Juvenile Officer was well aware of each of the allegations K.S.-W. purportedly made to D.B.W. and, for whatever reason, chose not to pursue any of these allegations in the neglect petition. In objecting to evidence at trial, the Juvenile Officer pointedly reminded the court that "[n]owhere in this petition is it contained that [K.S.-W.] made any allegations with regard to the parents ... that is not what we are adjudicating." As the Juvenile Officer argued at trial that such evidence was irrelevant, we find the Juvenile Officer's paradoxical position on appeal unconvincing.

The Juvenile Officer is correct that the failure to object to evidence at trial generally waives a party's right to dispute its admissibility on appeal. *State v. Brink*, 218 S.W.3d 440, 448 (Mo.App.2006). But

this was not a matter that called for an objection. One of the allegations in the Juvenile Officer's petition was that Appellant D.B.W. knew or should have known of Appellant C.P.S.'s behaviors with K.S.-W. and failed or refused to protect the child from C.P.S. Thus, we find it plausible that the court might have inquired into what K.S.-W. had reported to D.B.W. to ascertain what D.B.W. knew or should have known and should have taken action in response too. Therefore, we cannot say that this information was inherently inadmissible evidence that demanded an objection. Nevertheless, the record reveals that D.B.W. first learned of the five aforementioned allegations by K.S.-W. after K.S.-W. no longer resided in the family home. Upon learning of the allegations, D.B.W. contemporaneously reported and discussed K.S.-W.'s allegations with the Division of Family Services. Thus, under the circumstances, D.B.W. did all that he could to protect K.S.-W. upon learning of the allegations.

We find, therefore, that while it may have been acceptable for the court to inquire into K.S.-W.'s reports to D.B.W. so as to ascertain the extent of D.B.W.'s knowledge and possible failure to protect, those reports were only admissible for that purpose and not for their truthfulness. Here, the court's findings and conclusions suggest that the court accepted K.S.-W.'s allegations for their truth—inconsistent with the court's vigorous refusal to permit testimony about the truth of the reports at varied times during the trial, and inconsistent with the court's stated intent at the time it inquired about the statements. In

---

2. An audiotape and corresponding transcript of a Children's Division interview, where D.B.W. discussed the statements K.S.-W. made, were also admitted without objection. However, when C.P.S.'s counsel asked the court, prior to the admission of this evidence,

whether everything in the interviews would be admissible, the court stated: "If it's irrelevant or doesn't go to anything as far as the petition is concerned, then no, it's not admissible and I'm not going to consider it."

its Judgment, the court included D.B.W.'s testimony regarding K.S.-W.'s allegations but did not include D.B.W.'s corresponding testimony that, because D.B.W. himself was present when some of the allegations supposedly occurred, he knew certain allegations by K.S.-W. did not happen. Hence, the court's findings represent not merely a recitation of evidence, but a recitation of evidence the court deemed most credible or most likely accepted as truthful.

In *In re Y.S.W.* our Eastern District recently said:

> It is well established that litigants facing deprivations are guaranteed notice of, and the opportunity to defend against, the charges against them. Due process mandates that parents in juvenile court facing allegations of abuse or neglect are entitled to the same notice of the specific allegations of abuse or neglect against them, and the opportunity to defend against those charges.

402 S.W.3d 600, 604 (Mo.App.2013) (internal citations omitted). The court in *Y.S.W.* concluded that the parents in that case had been deprived of notice and the opportunity to contest and present a defense when the court adjudicated the children based upon a finding not alleged in the Juvenile Officer's petitions. Here, K.S.-W.'s statements, if true, are suggestive of abuse and/or neglect. Appellants were given no notice and no adequate opportunity to defend against K.S.-W.'s statements, or cross-examine K.S.-W. who was nineteen years old at the time of the final hearing

on the matter. Although we have no way of determining the extent to which the court's consideration of these statements may have impacted the court's ultimate determination of abuse [3] and neglect with regard to the petition's allegations, the court's findings prove that they were given consideration. As there is a reasonable probability that the court's findings and conclusions would have been different absent the consideration of this evidence, we presume prejudice. Appellant's third point is granted.

We conclude, therefore, that the circuit court abused its discretion in considering and relying on prejudicial evidence that proved to be irrelevant to the allegations in the petition. We reverse the judgment of the circuit court and remand for a new hearing.

All concur.

---

3. The court found that Appellants' behaviors amounted to "sexual abuse and neglect" and "abuse and neglect." The crime of "sexual abuse" occurs when a person subjects another person to sexual contact by forcible compulsion. § 566.100, RSMo 2000. "Sexual contact" involves "any touching of another person with the genitals or any touching of the genitals or anus of another person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." § 566.010, RSMo Cum. Supp.2012. The Juvenile Officer made no allegations of "sexual abuse" or "abuse" in the petition and only alleged neglect. Along with K.S.-W.'s statements, Appellants were given no opportunity to defend these additional findings upon which the court based adjudication.