

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF: K.S.W.;

        Plaintiff,

JUVENILE OFFICER;

        Respondent,

DEPARTMENT OF SOCIAL SERVICES, MISSOURI CHILDREN'S DIVISION,

        Respondent,

v.

C.P.S.;

        Appellant,

D.B.W.,

        Appellant.

WD77453

OPINION FILED:

February 17, 2015

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable John M. Torrence, Judge**

**Before Division Three: Victor C. Howard, P.J., James Edward Welsh, and Gary D. Witt, JJ.**

C.P.S. and D.B.W. ("the Parents") appeal the circuit court's judgment sustaining the Juvenile Officer's petition which alleged that K.S.W. ("the Juvenile") was without the necessary and proper care, custody, or support and is subject to jurisdiction of the court, pursuant to section 211.031.1, RSMo.[1]  We dismiss.

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement.

## Background

This case was initially presented to the circuit court in 2011 and 2012. The circuit court sustained the Juvenile Officer's petition at that time, and, on appeal, this Court reversed and remanded for rehearing in *In re K.S.-W.*, 412 S.W.3d 452, 457 (Mo. App. 2013). That opinion recites the pertinent background facts as follows:

> In December of 2003, when K.S.-W. was ten years old, the Children's Division placed K.S.-W. in the foster home of Appellants[2] after he was abused in his prior foster home. Appellants adopted K.S.-W. and his brother, D.J., in December of 2006.
>
> In August of 2010, when K.S.-W. was seventeen years old, he was placed in the Woodward Sexual Offender Program. In the program, participants are required to take a polygraph test and discuss incidents of sexual abuse they perpetrated along with any sexual acts perpetrated on them. During the polygraph test, the examiner asked K.S.-W. if he had ever been sexually abused at home and he initially said, "No." The test indicated that K.S.-W. failed that question and the examiner and staff discussed this with him further. K.S.-W. then reported that he had improperly touched his older half-brother who had cerebral palsy, that he had molested a current foster brother, and that Appellant C.P.S. had abused him. K.S.-W.'s allegations with regard to C.P.S. were "hotlined" to the Children's Division, and Children's Division staff interviewed Appellants . . . regarding the allegations.

*Id.* at 453. As part of the hotline investigation, Rhonda Schilli, a child services worker, interviewed the Appellants at their home in September 2010. Schilli and her supervisor, Jennifer Washam, interviewed C.P.S. in December 2010. C.P.S. recorded both interviews.

Based on those interviews, on March 30, 2011, the Jackson County Juvenile Officer filed a petition alleging that K.S.W. is without the proper care, custody, or support necessary for his well being and is subject to the jurisdiction of the juvenile court, pursuant to section 211.031.1. That statute grants the juvenile court "exclusive original jurisdiction" in proceedings "[i]nvolving any child or person seventeen years of age . . . alleged to be in need of care and treatment"

---

[2]The Appellants, D.B.W. and C.P.S., are both male.

2

because his parents have failed to provide the care and support necessary for his well-being, or he is "otherwise without proper care, custody or support." § 211.031.1(1). On that same day, the circuit court ordered that K.S.W. be placed in the care and custody of the Children's Division.[3]

The Juvenile Officer's petition alleged specifically that:

1. The child is without proper care, custody or support necessary for his well being and is subject to jurisdiction pursuant to 211.031.1 RSMo in that his parents, D.B.W. and C.P.S., neglect him.

2. The child has a history of sexual abuse and has exhibited sexualized behaviors both prior and subsequent to his adoption, at the age of eleven, by C.P.S. and D.B.W. The child is also diagnosed with Reactive Attachment Disorder.

3. Despite the parents' knowledge of the child's history and behaviors:

(a.) The parents admitted to Children's Division staff that since the child's adoption, they have engaged in "cuddle time" with the child in the parents' shared bed at times when both parents were naked and covered with only a sheet or a blanket.

(b.) On or about December 16, 2010, C.P.S. admitted to Children's Division staff that, on more than one instance during "cuddle time" with the child, [C.P.S.]'s penis was erect.

(c.) On or about December 16, 2010, C.P.S. admitted to Children's Division staff that during the brief time in 2009 after the child's discharge from Ozanam but before the child's placement in Woodward Academy's Sex Offender Program, C.P.S. took the child on a biking trip on the Katy Trail, during which trip [C.P.S.] and the child slept naked in the same bed together two nights during the trip and on one of those nights, C.P.S. engaged in "cuddle time" with the child while he and the child were naked.

(d.) D.B.W. knew or should have known of C.P.S.'s above referenced behaviors with the child and failed or refused to protect the child from C.P.S.

---

[3]Although K.S.W. would turn eighteen years of age on April 3, 2011, four days after the petition was filed, "the jurisdiction of the court attaches from the time the juvenile is taken into judicial custody." *See* Mo. Juv. Proc. Rule 123.01(b). In addition, under section 211.041, "[w]hen jurisdiction over the person of a child has been acquired by the juvenile court . . . in proceedings coming within the applicable provisions of section 211.031, the jurisdiction of the child may be retained for the purpose of this chapter until he or she has attained the age of twenty-one years." Following this court's remand, a new adjudication hearing was held, and the circuit court entered its judgment on March 28, 2014. Six days later, on April 3, 2014, K.S.W. turned twenty-one years of age.

4. The child is at risk of further harm or neglect absent the intervention of this Court.

As stated, the cause was originally presented to the juvenile court over several days in 2011 and 2012. On September 21, 2012, the court sustained the Juvenile Officer's petition. The Parents appealed, and this Court reversed and remanded for a rehearing on the basis that the circuit court considered and relied upon prejudicial evidence that was outside of and irrelevant to the allegations in the petition. *K.S.-W.*, 412 S.W.3d at 454-55.

On remand, Appellants successfully moved for a change of judge, and a different Commissioner conducted a new adjudication hearing on March 19 and 21, 2014. At the rehearing, Rhonda Schilli testified about her interview with the Parents on September 24, 2010. Both Schilli and Jennifer Washam testified about the December 16, 2010 interview with C.P.S. The Juvenile Officer presented the recordings and transcripts of those interviews. The Juvenile Officer also introduced portions of the transcript of Dr. Sally D. Popper's[4] testimony from the first trial. Both Appellants testified, and they introduced transcript designations from Dr. Popper's prior testimony.

Following the conclusion of the adjudication hearing, the circuit court entered its "Order and Judgment" on March 28, 2014. The court sustained each of the allegations in the Juvenile Officer's petition. The court found, "based on all the evidence received," that the Parents' actions "resulted in neglect to K.S.W." and that K.S.W. was subject to the jurisdiction of the juvenile court, pursuant to section 211.031.1(1)(b).

The Parents appeal.

---

[4]Sally Popper, Ph.D., M.Ed., was K.S.W.'s therapist. K.S.W. had individual and family therapy with Dr. Popper twice weekly from 2004 to 2009. She diagnosed K.S.W. with Reactive Attachment Disorder and advised the Parents, among other things, to engage in healthy physical contact with K.S.W. in the form of nurturing touch.

4

## Discussion

Before we consider the merits of the Parents' appeal, we first must determine *sua sponte* whether we have the authority to do so. *In re J.W.P.*, 986 S.W.2d 198, 199 (Mo. App. 1999). "A prerequisite to appellate review is that there be a final judgment." *Id.* If there is no final judgment, this Court must dismiss the appeal. *See id.* In order to properly assess this matter, we begin with an overview of the applicable statutes and rules governing juvenile proceedings.

Chapter 211 of Missouri's Revised Statutes governs all proceedings brought in juvenile court. *In re A.R.*, 330 S.W.3d 858, 862 (Mo. App. 2011). Sections 211.171 and 211.181, generally, and Rules 124.06 and 124.07,[5] more particularly, provide for bifurcated hearings to dispose of any petition alleging that a minor is in need of care and treatment by the court. These hearings are identified as an adjudication hearing and a dispositional hearing. *See In re M.P.R.*, 381 S.W.3d 392, 393-94 (Mo. App. 2012) (citing § 211.032.4); §§ 211.171 and 211.181; Rules 124.06 and 124.07. The first hearing concerns only whether the Juvenile Officer established the necessity of the court to assume jurisdiction over the child. *M.P.R.*, 381 S.W.3d at 394. There, the juvenile court conducts an adjudication hearing at which it receives evidence on the allegations that have not been admitted. *In re O.J.B.*, 436 S.W.3d 726, 729 n. 1 (Mo. App. 2014); Rule 124.06(c). The purpose of the adjudication hearing is for the juvenile court to determine whether there exists sufficient evidence that the court should assume jurisdiction over the child. *A.R.*, 330 S.W.3d at 862-63; § 211.031. If, at the adjudication hearing, the court determines that such evidence exists, the court then moves to the dispositional phase. *M.P.R.*, 381 S.W.3d at 394

---

[5]Rules 110 through 129 govern practice and procedure in the juvenile and family court divisions of the circuit court under Chapter 211 and certain sections of Chapter 210. Rule 110.01.

(citing § 211.032.4).[6] In that second hearing, the juvenile court must conduct a separate hearing to determine what disposition, if any, (*i.e.*, placement, treatment, and care) the court should order as being in the best interest of the child. *See id.* After the dispositional hearing, the court "*shall enter an order for the legal and physical custody of the juvenile*." Rule 124.07(e)(1) (emphasis added).[7] Section 211.181.1 lists the various dispositions that the juvenile court may make after it has determined that a child is subject to its jurisdiction, pursuant to section 211.031.1(1).[8]

With that framework in mind, we turn back to the issue of finality. Section 211.261.1 provides that a parent may appeal "from any final judgment, order or decree made under the provisions of this chapter which adversely affects him." "Generally, a final judgment disposes of all issues in the case and leaves nothing for future determination." *M.P.R.*, 381 S.W.3d at 393. The standard for a "final judgment" in a juvenile case differs from this general standard, however, because the very nature of a juvenile proceeding anticipates an on-going consideration. *Id.* In a juvenile case, "[o]nce the trial court issues a judgment *that includes the disposition or treatment of the juvenile*, all the issues before the . . . court have been disposed[,] nothing has

---

[6]Rule 124.06(f) provides that the dispositional hearing may immediately follow the adjudication hearing but, if not, must be scheduled within the adjudication hearing findings and order.

[7]Additionally, Rule 124.07 provides that the court shall make findings "on whether the children's division is required to engage in reasonable efforts to reunify the family" and "on the services required to reunify the family," and the court "shall schedule a future dispositional review hearing or, when appropriate, a permanency hearing." *O.J.B.*, 436 S.W.3d at 729 n. 1 (citing Rule 124.07(c) and (e)(4)).

[8]The various dispositions set forth in section 211.181.1 include (1) placing "the child or person seventeen years of age under supervision in his own home or in the custody of a relative or other suitable person " or (2) committing him to the custody of: a public agency or institution (or other licensed institution or agency) authorized by law to care for children or to place them in family homes; an association, school, or institution in another state if specific conditions are met; or the juvenile officer.
It is at least theoretically possible that, after the dispositional hearing, the court could find that although the minor comes within the jurisdiction of the court (as found in the adjudication hearing), the parents, or other custodian, can adequately handle the matter without assistance of the court and dismiss the petition.

been left for future determination, and the judgment is final and appealable." *Juvenile Officer v. A.S.M.*, 423 S.W.3d 824, 829 (Mo. App. 2014) (emphasis added).

Conversely, where the judgment does *not* include the disposition or treatment of the juvenile, there *are* issues "left for future determination." *See Interest of T---G---*, 455 S.W.2d 3, 7 (Mo. App. 1970). In *T---G---*, one of the earliest cases to address this issue, the court stated:

> [W]e do not have a final judgment after the finding of January 24, 1968, because it did not dispose of the parties and all the issues. Disposition of the child awaited the hearing of March 25, 1968. Something was left for further determination. His future course of training, custody and control would be decided at the dispositional hearing.

*Id*. The court held that "until judgment is rendered in which some disposition is made of the child under Section 211.181, there is no final appealable judgment." *Id*. at 8. Since then, various courts have relied on this rationale to dismiss appeals for lack of a dispositional hearing and order. *See, e.g., M.P.R.*, 381 S.W.3d at 393-94 (appeal dismissed on basis that "absent an order of disposition concerning [the juvenile], there is no final, appealable judgment or order"); *In re T.E.*, 35 S.W.3d 497, 505 (Mo. App. 2001) (a finding of jurisdiction that "simply affirmed the . . . previous order placing [child] in protective custody *pending* a disposition hearing," is not a final judgment for purposes of appeal); *Interest of K.S.*, 856 S.W.2d 915, 917 (Mo. App. 1993) (dismissing appeal where "there was no disposition; hence, no judgment from which an appeal will lie"). *See also O.J.B.*, 436 S.W.3d at 730 n.2 (noting that "the adjudication order was not appealable until the dispositional hearing . . . and the judgment thereafter").

Procedurally, this case is nearly identical to *M.P.R.*, which the Eastern District of this Court recently dismissed for lack of a final, appealable judgment. That court explained:

> [T]he initial adjudication hearing was held to determine whether sufficient cause existed for [the child] to remain in the protective custody of the State. The trial court was then required to hold a second hearing, the dispositional hearing.

7

> Following this dispositional hearing, the court will make findings concerning the legal and physical custody of the juvenile, among other findings. However, as previously discussed, the trial court did not hold a dispositional hearing in this case. Instead, Mother appealed the order entered by the trial court following the initial adjudication hearing. The order entered by the court in this case was not an order of disposition. It simply affirmed the initial placement of [the child] into protective custody, finding sufficient cause existed to maintain that protective custody pending the dispositional hearing. As discussed above, absent an order of disposition concerning [the child], there is no final, appealable judgment or order.

*M.P.R.*, 381 S.W.3d at 394 (internal citations omitted).

Similarly, in this case, the juvenile court held an adjudication hearing in March 2014. Following the conclusion of that hearing, the circuit court entered its "Order and Judgment," in which it sustained the Juvenile Officer's petition and held that the Juvenile was subject to the jurisdiction of the court, pursuant to section 211.031.1(1)(b). The record before this Court indicates that the juvenile court did *not* conduct a dispositional hearing prior to the Parents filing their notice of appeal.[9] Based on the authorities cited herein, the adjudication judgment being appealed is not a final, appealable judgment because there was no dispositional hearing, and, hence, no judgment of disposition as to this Juvenile. Where there is no final, appealable judgment, this Court has no authority to consider the appeal. *See M.P.R.*, 381 S.W.3d at 394; *J.W.P.*, 986 S.W.2d at 199. Consequently, we are constrained to dismiss the Parents' appeal.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

---

[9]"The finality of a judgment for the purpose of appeal is determined by the situation as it exists in the trial court at the time the appeal is sought." *T.E.*, 35 S.W.3d at 505 n.13.

We acknowledge that the lack of a dispositional hearing herein is understandable because, when the dispositional hearing did not follow immediately upon the conclusion of the adjudication hearing, it may not have been possible to conduct one prior to the court losing jurisdiction over K.S.W. on his 21st birthday on April 3, 2014.