

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF R.H.,

JUVENILE OFFICE,

    **Respondent,**

**v.**

L.J.A. (MOTHER),
    **Appellant;**

A.H. (FATHER),

    **Defendant.**

**WD79098**

**OPINION FILED:**

**MAY 10, 2016**

### Appeal from the Circuit Court of Clay County, Missouri
### The Honorable Kathryn Elizabeth Davis, Judge

### Before Division Three: Gary D. Witt, P.J., James E. Welsh, Anthony Rex Gabbert, JJ.

L.J.A. (Mother) appeals the circuit court's judgment assuming jurisdiction over her child, R.H., and placing the child in the care and custody of the Department of Social Services, Children's Division (Children's Division). Mother asserts two points on appeal. She contends that the circuit court erred in assuming jurisdiction over R.H. pursuant to Section 211.031.1, RSMo Cum. Supp. 2015, for the reasons that: (1) The court's judgment was not supported by substantial evidence because the court received no evidence that the child was presently in need of any care or support that was not being provided to her, and (2) The court's judgment misapplied the law because the court relied on its presumption that the use of drugs by a parent

creates a condition leaving the child in need of care under the statute with no evidence of lack of parental care or support for the child. We affirm.

R.H. was born March 29, 2012, in Kansas City. At the time of her birth, testing of the child's meconium indicated the presence of marijuana. Consequently, the Children's Division was contacted and a Newborn Crisis Assessment was completed by an investigator with that agency. Upon completing the Newborn Crisis Assessment, the Children's Services investigator concluded that a Family Centered Services case would not be opened.

Three years later on June 7, 2015, the Children's Division received a report of concern alleging that R.H. had "unsafe/inadequate shelter and meth lab exposure" and that the parents had been observed manufacturing methamphetamine (or "meth"). The Children's Division investigator and the police made an unannounced visit to the family home. The investigator reported that they "were made to wait outside for an extended period of time before being permitted to enter the home." Once in the home, the investigator and law enforcement "observed nothing indicative of manufacturing meth." During the visit, however, Mother admitted to marijuana use. The investigator reported that Father indirectly admitted to "use," although it is unclear what type of "use" he indirectly admitted to. A drug test performed on Mother the following day was positive for the presence of meth. Mother then admitted to using meth. Mother and Father admitted a need for treatment and agreed to treatment. Mother, Father, and the investigator arrived at an agreement with regard to a "safety plan" for R.H. wherein the parents agreed to allow R.H. to live with her maternal grandfather until the parents "could get the appropriate help."

On July 2, 2015, approximately three and a half weeks after receiving the report of concern, the Children's Division requested Juvenile Court intervention alleging that both parents

2

had failed to follow through with agreed upon drug treatment and had declined additional services. The Children's Division expressed concern that, although R.H. was still residing with her grandfather, the "safety plan" would become null and void at the close of the investigation. The Children's Division explained that a pattern of drug use within the family was evident because of R.H.'s prenatal exposure to marijuana and because her "primary caregivers are abusing the highly addictive drug, Meth." The request for intervention expressed that R.H.'s young age, complete dependence on caregivers, and inability to verbalize her needs placed her in need of the court's protection.

On July 30, 2015, the Juvenile Officer filed a petition alleging R.H. to be in need of the care and protection of the court because the parents neglected or refused to provide proper support, medical, surgical or other care necessary for her well-being. The Petition further alleged that: 1) At the time of R.H.'s birth on March 29, 2012, her meconium tested positive for marijuana; 2) On June 8, 2015, Mother tested positive for methamphetamines and has admitted to using marijuana and methamphetamines; 3) Parents admitted the need for drug treatment and had been offered services but had failed to obtain treatment or engage in services; 4) The Children's Division and Juvenile Office had attempted to work with and offer services to the family but the parents had been uncooperative and unwilling to participate in those services and had failed to submit to all requested urine analysis; 5) During a welfare check conducted by the police and Juvenile Officer on July 29, 2015, Mother refused to sign consent to have her home searched and refused to take a urine analysis offered by the police, and; 6) Reasonable efforts had been made to prevent removal of the child from the home or, in the alternative, reasonable efforts would have been futile or an emergency existed.

On August 4, 2015, a protective custody hearing was held and the court took protective custody of R.H. On September 10, 2015, the court heard evidence on the Juvenile Officer's petition. Three witnesses testified: the Children's Division investigator who investigated the meth allegations, a supervisor from Northland Dependency Services whose agency performed urinalysis testing on Mother, and the Deputy Juvenile Officer who followed up on the Children's Division's request for intervention. Along with these witnesses and in support of the allegations in the petition, the Juvenile Officer introduced as exhibits the 2012 Newborn Crisis Assessment, the 2012 Research Hospital medical records from R.H.'s birth, the June 8, 2015 urinalysis results showing Mother positive for methamphetamine, and the July 2, 2015 letter from the Children's Division to the Juvenile Office requesting intervention.

At the close of the hearing the court verbally expressed that it had found no evidence against Father and judged Father to be a non-offending parent. The court concluded that Mother's admitted meth use, however, made her incapable of being a good parent. The court's written judgment found all allegations in the Juvenile Officer's petition to be true with regard to Mother. The court found that the Children's Division had made reasonable efforts to prevent removal of the child and ordered that R.H. be placed in the care and custody of the Children's Division for placement with Father on a trial home visit. Father and Mother were ordered to cooperate with Written Service Agreements provided by the Children's Division. Mother appeals.

We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re A.G.R.*, 359 S.W.3d 103, 108 (Mo.App.2011). We consider the evidence in the light most

4

favorable to the circuit court's ruling and ignore any evidence to the contrary. *In re A.M.S.*, 272 S.W.3d 305, 307 (Mo. App. 2008); *In re B.J.K.*, 197 S.W.3d 237, 247 (Mo. App. 2006).

> To assert jurisdiction under Section 211.031.1(1), the juvenile or family court must find clear and convincing evidence that the child needs care because the parent has neglected to provide the care necessary for the child's well-being. Evidence is clear and convincing when it instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true. Furthermore, 'substantial evidence,' as used in *Murphy v. Carron*, means clear, cogent, and convincing evidence when that standard of proof applies.

*In re J.M.*, 328 S.W.3d 466, 471 (Mo. App. 2010) (internal quotation marks and citations omitted).

In her first point on appeal, Mother contends that the circuit court erred in assuming jurisdiction over R.H. under Section 211.031.1 because the court's judgment was not supported by substantial evidence in that the court received no evidence that the child was presently in need of any care or support that was not being provided to her. We disagree.

"Direct evidence of abuse or neglect is not required to support a finding of abuse or neglect" and "[t]he juvenile court, as a fact finder, may draw all reasonable inferences from the evidence and may base its findings upon such inferences." *In re M.N.J.*, 291 S.W.3d 306, 311 (Mo. App. 2009) (internal citations and quotation marks omitted). Here, the child was born with traces of marijuana in her meconium which allows for a reasonable inference that Mother knowingly exposed her unborn child to that drug. The Children's Division investigated and, although no case was opened, it can be inferred that the investigation put Mother on notice that illegal parental drug use is highly concerning and may warrant State intervention. Three years later an allegation of meth lab exposure caused the Children's Division to again investigate the child's welfare. Upon investigation, while Mother initially admitted to using marijuana, she only

admitted to using methamphetamines after her urinalysis revealed the presence of meth. Mother then agreed to pursue treatment. However, the evidence at trial showed that she failed to follow through with this agreement. After completing an "initial intake" for treatment, Mother cancelled follow-up visits and failed to complete a full assessment or undergo treatment. One urinalysis submitted by Mother in July was rejected by the testing agency on the belief that it had been tampered with. On July 29, 2015, almost two months after Mother first tested positive for meth, Mother refused a request for a urinalysis. A reasonable inference can be drawn that Mother refused to submit to the test because she was concerned about the outcome and that Mother was continuing to abuse illegal substances. The record reflects that, because R.H.'s father worked outside of the home and Mother stayed home with R.H., Mother was R.H.'s sole caregiver during the time that Father was working. Consequently, we find substantial evidence in the record to support the court's judgment that R.H. was in need of care and support due to Mother's admitted drug use, Mother's admitted need for treatment during such time as Mother was the primary caregiver of three-year-old R.H., and Mother's failure to follow through with treatment. Point one is denied.

In her second point on appeal, Mother contends that the circuit court erred in assuming jurisdiction over R.H. pursuant to Section 211.031.1, because the court's judgment misapplied the law in that the court relied on its presumption that the use of drugs by a parent creates a condition leaving the child in need of care under the statute with no evidence of lack of parental care or support for the child.

As discussed above, the evidence before the court was that a report of concern to the Children's Division regarding the child's alleged exposure to drugs resulted in Mother, the child's primary caregiver, being deemed in need of treatment for her use of methamphetamines.

6

That primary caregiver, Mother, admitted her need for treatment and agreed to pursue treatment but failed to follow through with treatment. Mother's positive urine test for methamphetamines during such time as the child was in Mother's care, Mother's lack of candor regarding her methamphetamine use, Mother's failure to follow through with treatment for that use, and Mother's avoidance of drug testing two months after Children's Services first investigated the allegations of concern, allow for a reasonable inference that the child was being cared for by Mother during such times as Mother was under the influence of an addictive, dangerous, and illegal drug. Consequently, it also allows for an inference that the child was without proper care and support while in Mother's care and that, without court intervention, the child was at further risk of harm. We disagree that the court's judgment was based solely on a general presumption that the use of drugs by a parent creates a condition leaving the child in need of care under the statute. Point two is denied.

We conclude, therefore, that the circuit court did not err in assuming jurisdiction of R.H. pursuant to 211.031.1 as the judgment was supported by substantial evidence and the court did not misapply the law. We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

7