

# Missouri Court of Appeals
## Southern District

### In Division

In the Interest of: )
J.H.B. and J.A.B, minor children, )
)
GREENE COUNTY JUVENILE )
OFFICE, )
)
    Petitioner-Respondent, )
)
v. ) Nos. SD38913 and SD38914
)    (consolidated)
J.E.B., JR., Natural Father, )
) Filed: September 26, 2025
    Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
Honorable D. Andrew Hosmer

**JUDGMENTS VACATED**

J.E.B., Jr. ("Father") challenges the judgments of adjudication and disposition

entered by the juvenile division of the circuit court ("the juvenile court") that placed his

biological children, J.H.B. and J.A.B. ("the children"), under the care and control of the

juvenile court and the Children's Division of the Department of Social Services

1

("Children's Division").[1] *See* section 211.031.1(1)(a) and (b)).[2] Father raises three points on appeal that claim: (1) the Juvenile Officer of Greene County ("Juvenile Officer") did not present substantial evidence to support the judgment; (2) the judgment was against the weight of the evidence; and (3) no substantial evidence supported the proposition that Juvenile Officer made reasonable efforts to prevent or eliminate the need to remove the children from Father's custody.

Because Father's first claim has merit, and is dispositive of this consolidated appeal, we vacate the judgments and do not address Father's second or third points.

## Standard of Review

"We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *In re R.H.*, 488 S.W.3d 93, 96 (Mo. App. W.D. 2016). "We consider the evidence in the light most favorable to the circuit court's ruling and ignore any evidence to the contrary." *Id.*

## Background

Father was not named in the original petitions because his paternity had not yet been established. Once it had been (via DNA analysis), Juvenile Officer amended the petitions to name Father as the biological father of the children. On December 30, 2024,

---

[1] We have consolidated for purposes of appeal the two cases below that produced the separate judgments entered in each case. For the sake of simplicity, we refer collectively to the almost-identical judgments as "the judgment" in the body of this opinion.

[2] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2024.

the juvenile court held a contested jurisdiction hearing as to Father on the First Amended Petitions ("the amended petitions").

The amended petitions contained the following averments:

A. [Mother] continues to be in a domestic violence relationship with [Father]. [Mother] has a history of being in and out of domestic violence shelters and returning to [Father]. [Father] has beaten [Mother] in the presence of the child[ren]. [Mother] admitted to Children's Division that [Father] has been physically violent to her.

B. [Father] is known to law enforcement as being a violent person. [Father] has a criminal history. In Case No. [], [Father] entered a guilty plea to Murder in the second degree and to Armed Criminal Action. On information and belief, [Father] has been on federal [supervision for felon in possession of a firearm[3]].

C. [Mother] has a history of using methamphetamine. [Mother] had an in-patient bed date of May 2, 2024 for substance abuse treatment. [Mother] failed to appear for this drug treatment.

D. [Mother] continues to be uncooperative with Children's Division. [Mother] has declined services offered by Children's Division.

E. Expert DNA paternity testing was performed, the results of which show that [Father] cannot be excluded as the biological father of the child[ren], in that the probability of paternity is 99.99%.

At the outset of Father's adjudication hearing, Father admitted that DNA testing showed a 99.99% probability that he is the natural father of the children. In regard to the amended petitions, Father did not contest the allegations in paragraphs C and D as those averments concerned Mother only. Father contested the first sentence of paragraph B (that he was known to law enforcement to be a violent person), but he did admit that he has a criminal history, having pleaded guilty to second-degree murder and armed

---

[3] Because the description of the federal charge at issue was not precise, the parties agreed to amend the averment as reflected in the bracketed language.

criminal action in 2007. Father also admitted that he was placed on federal supervision for felon in possession of a firearm in 2006. No other details of Father's criminal history were presented to the juvenile court. Finally, Father contested all of the averments contained in paragraph A other than the averment that Mother has a history of being in and out of domestic violence shelters.

Juvenile Officer called two witnesses to support the allegations contested by Father. Mother was the first witness, and she provided the following testimony. Mother was in a romantic relationship with Father for eight or nine years. Their relationship ended sometime in November 2023, after Mother said that Father was unfaithful to her. There were several incidents of verbal arguments between Mother and Father during their relationship, but there was only one occasion on which there was physical contact between them, and that was when Father pushed Mother before the children were born. Mother was not injured by the push. Mother also generically testified that she was emotionally abused by Father. Mother further stated that after her relationship with Father ended, she was homeless, and she resorted to staying at local domestic violence shelters. One of the shelters asked Mother to leave because her relationship with Father had ended due to allegations of infidelity, not because of domestic violence.

The other witness called by Juvenile Officer was a law enforcement officer. The officer testified that he went to Father's residence in January 2024, after Father had kicked Mother out of his residence. The officer testified that Father and Mother had a verbal argument that day, and Mother sought shelter for the evening. Father did not welcome Mother back into his home, but he told the officer that the children were

4

welcome back inside. The officer took Mother and the children to a local shelter for the night. No other witnesses were called, and no exhibits were entered into evidence.

The juvenile court made an oral pronouncement of its adjudication judgment at the beginning of the dispositional hearing that was later held on January 23, 2025, declaring that the children came within the juvenile court's jurisdiction. The juvenile court expressly stated that Juvenile Officer did not prove the averments of the amended petitions contained in paragraph A or the first sentence contained in paragraph B. Therefore, the juvenile court found that Father's criminal history was true, along with the averments set forth in paragraphs C, D, and E. The judgment regarding the children and Father was filed on January 28, 2025, and that is the judgment Father timely appealed.

During the disposition hearing, evidence was presented that Father had cooperated with Juvenile Officer's request that he complete a "Dads class" and a "Thrive" healthy-relationship class. Father had also attended therapy every week at "Thrive." Father has owned his own home for the last four years, and the Children's Division caseworker approved of Father's home. Father has also had unsupervised visits with the children, and because those visits were going well, Father was allowed to have extra visits with the children.

**Analysis**

"Chapter 211 of the Revised Missouri Statutes governs all proceedings brought in juvenile court, including the determination of whether the juvenile court has jurisdiction over a matter." *In re Y.S.W.*, 402 S.W.3d 600, 603 (Mo. App. E.D. 2013). "When a juvenile officer files a petition alleging a child is in need of care and treatment under

5

[s]ection 211.031, the circuit court first conducts an adjudication hearing." ***In re T.D.***, 645 S.W.3d 669, 676 (Mo. App. E.D. 2022). "At the adjudication hearing, the court determines whether the child is in need of care and treatment because the child is without proper care, custody, or support." ***Id.*** (quoting section 211.031.1(1)).

"The court may assume jurisdiction over the child only if it finds the allegations in the petition are proved by clear and convincing evidence." ***Id.*** "If the court assumes jurisdiction over the child, then the court conducts a second, dispositional hearing." ***Id.*** "At the dispositional hearing, the court determines what placement, treatment, and care are in the best interests of the child." ***Id.*** "It is not until the order of disposition has been issued that a party may appeal." ***P.D.E. v. Juv. Officer***, 669 S.W.3d 129, 132 (Mo. banc 2023).

"The purpose of the adjudication hearing is for the juvenile court to determine whether there exists sufficient evidence that the court should assume jurisdiction over the child." ***In re J.B.***, 472 S.W.3d 242, 249 (Mo. App. W.D. 2015) (quoting ***K.S.W. v. C.P.S.***, 454 S.W.3d 422, 426 (Mo. App. W.D. 2015)). "To make this determination, the juvenile court 'receives evidence on the allegations that have not been admitted.'" ***Id.*** (quoting ***K.S.W.***, 454 S.W.3d at 426). "When a petition alleges that a child is in need of care and protection as the basis for jurisdiction, the standard of proof is clear and convincing evidence." ***Id.*** (quoting ***In re G.F.M.***, 169 S.W.3d 109, 111 (Mo. App. W.D. 2005)). "The burden of establishing clear and convincing evidence is on the Juvenile Office." ***Id.*** "The clear, cogent and convincing standard is more stringent than that of

'preponderance of the evidence.'" ***In re B.T.C.***, 382 S.W.3d 193, 197 (Mo. App. S.D. 2012) (quoting ***In re A.M.C.***, 983 S.W.2d 635, 637 (Mo. App. S.D. 1999)).

Father's first point claims the judgment's finding that the children were in need of care and treatment because they lacked care, custody, or support was not supported by substantial evidence. In doing so, Father has adhered to the mandatory framework for presenting a no-substantial-evidence challenge as set forth in ***Houston v. Crider***, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010).

> A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:
>
> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
>
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

***Id.***

Here, Father challenges the juvenile court's finding that Father failed to provide proper care, custody, or support for the children. Father identifies the following evidence as favorable to that proposition: There was an incident in 2015 in which Father pushed Mother; Father kicked Mother out of his residence in January 2024 after a verbal argument about Father's alleged infidelity; and Mother and the children left with a law enforcement officer that day. Another verbal argument between Mother and Father

occurred in November 2023, and it resulted in law enforcement arriving on scene. Mother also felt that she was emotionally abused by Father.

However, the juvenile court's judgment expressly rejected the averments set forth in paragraph A of the amended petition, which claimed that Father physically abused Mother in the presence of the children or at any other time, and it also rejected the allegation that Father and Mother were in a relationship that included domestic violence. The juvenile court also rejected the averment in the first sentence of paragraph B of the amended petition that stated law enforcement knew Father to be a violent person.

The only other evidence was Father's admission of his criminal record. "When a court relies on a parent's past behavior to find abuse or neglect, it must make 'some explicit consideration' of whether the past acts indicate a likelihood of future harm." ***In re Q.A.H.***, 426 S.W.3d 7, 14 (Mo. banc 2014) (quoting ***In re K.A.W.***, 133 S.W.3d 1, 9-10 (Mo. banc 2004)). "In this manner, the parent's past conduct may be good evidence of future behavior, but it must be 'convincingly linked' to future behavior." ***Id.*** (quoting ***K.A.W.***, 133 S.W.3d at 9-10).

Here, Juvenile Officer did not link the existence of Father's prior criminal history to a future likelihood that it would prevent Father from being able to provide necessary care, custody, and support for the children. Father's most recent criminal offense occurred over seventeen years ago, well before the children were even born, and the children were not victims or witnesses of Father's criminal activity. No evidence was adduced that Father had abused or neglected the children. Although Father's prior criminal acts were horrific, no evidence supports the proposition that Father is likely to

8

commit future criminal offenses, including any offenses that would involve inflicting harm on the children.

In defending the judgment, Juvenile Officer focuses almost entirely upon alleged procedural flaws in Father's appeal. Specifically, Juvenile Officer argues that Father failed to comply with Rule 78.07(c),[4] which provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c). We reject that argument because Father is not challenging the form or language of the judgment. In addition, Juvenile Officer also claims that Father was required to file a post-judgment motion to preserve his claim on appeal, but Juvenile Officer does not direct us to any authority supporting that position, and we are not aware of any such authority.

"Generally, appellate courts will not consider evidence outside of the record on appeal." *8182 Maryland Assocs., Ltd. P'ship v. Sheehan*, 14 S.W.3d 576, 587 (Mo. banc 2000). However, "[t]his Court may take '[j]udicial notice of records from other related proceedings involving the same parties' upon the Court's own motion." *Abram v. TitleMax of Mo., Inc.*, 684 S.W.3d 74, 86 n.13 (Mo. App. E.D. 2023) (quoting *Ruff v. Bequette Constr., Inc.*, 669 S.W.3d 701, 707 n.3 (Mo. App. E.D. 2023)); *see also Vogt v. Emmons*, 158 S.W.3d 243, 247 (Mo. App. E.D. 2005) ("A court may take judicial notice of its own records and may take judicial notice of the records of other cases when justice

---

[4] Unless otherwise indicated, all rule references are to Missouri Court Rules (2025).

so requires"). In this case, we find that justice requires us to take judicial notice of the docket entries entered in the underlying cases during the time that Father's appeal has been pending in this court. Those entries indicate that the juvenile court has placed the children in the physical custody of Father, with the court retaining legal custody.

"A parent's right to raise [his] children is a fundamental constitutional right." *In re D.L.P.*, 638 S.W.3d 82, 88 (Mo. App. E.D. 2021). "Where, as here, a fundamental right is involved, this Court must be diligent to uphold the requirements of due process and protect the parent's fundamental liberty interest in the parent-child relationship." *In re T.D.*, 645 S.W.3d 669, 678 (Mo. App. E.D. 2022) (quoting *In re D.L.W.*, 413 S.W.3d 2, 12 (Mo. App. E.D. 2012)). Further, courts must "view the evidence as to Mother and Father independently and not consider evidence against Mother as detrimental to Father." *J.B.*, 472 S.W.3d at 251. The parents "may not be lumped together and disposed of wholesale with a single stroke." *Id.* (quoting *In re J.K.C.*, 841 S.W.2d 198, 200 (Mo. App. W.D. 1992)). Accordingly, although evidence of Mother's methamphetamine dependence and repeated homelessness was before the juvenile court, no evidence indicates that Father is plagued with those problems, and Father was not responsible for Mother's neglect of the children.

Because no credited, substantial evidence was adduced to support the juvenile court's finding that the children lacked care and treatment because Father neglected or

10

refused to provide them with necessary care, custody, and support, we grant Point 1 and vacate the judgments.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J. WEST, J. – CONCURS